UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JUAN TORRES, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-896-PPS-JEM |
| SHERMAN DAY, *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Juan Torres, a prisoner without a lawyer, filed an amended complaint, ECF 5, which I have to screen under 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Torres is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a plaintiff can plead himself out of court if he alleges facts that preclude relief. *See, e.g., Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Torres claims Officer M. McGee was responsible for investigating the death of an inmate named Leo Cullen that occurred at the Miami Correctional Facility. Following the investigation, it was determined Mr. Cullen was stabbed to death by other

offenders. In addition, the video evidence reviewed by Officer McGee showed Torres kicked and punched Mr. Cullen while he was on the ground after he had been stabbed. Prison disciplinary hearing board (DHB) Officer Sherman Day eventually found Torres guilty of aiding and abetting the murder.[1] Torres claims he was "not court mandated to pay restitution to the IDOC nor Wexford to cover any medical expenses for Cullen at the conclusion of said hearing." ECF 5 at 2. Based on the record, I construe Torres' statement to mean that no *outside* court authorized the restitution order, but he does admit he was sanctioned by the DHB. *See* ECF 2 at 2. Torres states, "[u]pon information and belief, Cullen, IDOC, nor Wexford sufered [sic] any financial deprivation due to Torres conduct." ECF 5 at 2. Torres claims he was not provided with any medical bills or evidence to support the restitution sanction. On June 28, 2022, funds were "removed from Torres trust fund account without Torres consent in the amount of $36.18." *Id*. at 3. He believes "IDOC has taken it upon themselves to unlawfully extract monies from Torres' account in an attempt to collect unauthorized restitution." *Id*. Torres claims Officer McGee, DHB Officer Day, and Captain J. Morgan "conspire[d]" to extract the

---

[1] Torres states he was found guilty by the DHB on March 18, 2022, but the report of disciplinary hearing attached to the amended complaint indicates it wasn't even assigned until March 24, 2022. *See* ECF 5-1 at 3. A more legible copy of that same document was attached to his original complaint, which makes it clear the hearing took place and the sanction was imposed on June 2, 2022. *See* ECF 2-3 at 3. (For purposes of clarity, I will refer to ECF 2-3 at 3 when discussing this document throughout the order.) The June hearing date is consistent with the request for remittance attached to the amended complaint related to the $100,000 restitution sanction, which is also dated June 2, 2022. *See* ECF 5-1 at 6.

As a general matter, I've reviewed all of the documents Torres submitted as part of the screening process. *See Holmes v. Marion Cty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025) ("The face of the complaint refers not just to its four corners but includes sources courts ordinarily consider when deciding a Rule 12(b)(6) motion, such as documents incorporated into the complaint by reference and public records of which the court may take judicial notice.").

money without his consent or a "court mandate." *Id*. He seeks compensatory and punitive damages plus an order removing the "unauthorized restitution." *Id*. at 4.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. Inmates have a property interest in the funds located in their prison accounts. *Wilson v. Castaneda*, 143 F.4th 814, 818 (7th Cir. 2025) (citing *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986). While prison officials cannot deprive inmates of those funds without any due process, the Seventh Circuit has determined "[i]t is truly too much to require correctional officials to seek a criminal restitution order or a civil tort judgment before they may restrict an inmate's use of his commissary account until he makes good the damage he has caused . . .." *Campbell*, 787 F.2d at 224. That is because "[s]uch a requirement would delay implementation of, and hence, impair the efficacy of prison disciplinary measures. It would significantly increase the cost of prison administration and unduly burden courts with litigation which is essentially administrative in nature." *Id*. Instead, inmate accounts can be debited or frozen pursuant to restitution orders issued by prison disciplinary boards as long as the "procedural safeguards" at the disciplinary hearing are constitutionally adequate per *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Id*. at 225.

In the prison disciplinary context, *Wolff* requires: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by

3

the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-73. Additionally, "a prison disciplinary decision must also be supported by 'some evidence' in the record." *Wilson*, 143 F.4th at 818 (quoting *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see also Campbell*, 787 F.2d at 222. This is a "meager" standard of proof requiring no more than a "modicum of evidence." *Wilson*, 143 F.4th at 819. Thus, when it has been determined an inmate challenging a restitution sanction "was afforded procedural due process consonant with the circumstances of his incarceration" during a disciplinary hearing related to that charge, he has not stated a valid Fourteenth Amendment claim. *Campbell*, 787 F.2d at 225. Importantly, when a disciplinary hearing conviction remains standing, inmates are barred from proceeding on any allegations that, if proven true, would undermine the validity of that finding of guilt. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (extending *Heck* to prison disciplinary proceedings).

Torres doesn't argue that any of the specific procedural safeguards of *Wolff* were violated during the disciplinary proceedings. Instead, like the plaintiff in *Wilson*, Torres believes his constitutional rights were violated because there was insufficient evidence to support the restitution sanction. He has attached several relevant documents to his amended complaint—the conduct report authored by Officer McGee and the review of video evidence, taken together, establish that Mr. Cullen was brutally stabbed by other offenders, that Torres played a role in the attack by kicking and punching Mr. Cullen as he laid on the ground and attempted to escape, and that Mr. Cullen later passed away from his injuries. *See* ECF 5-1 at 1–2. Following the disciplinary hearing, Torres was

4

found guilty of aiding or abetting the murder of Mr. Cullen (Adult Disciplinary Code A-111/A-100) and, among other grievous losses, was sanctioned with restitution. ECF 2-3 at 3. Although the box next to "Restitution (over $250)" is clearly checked, the writing on the form is too faint to make out the details. It's not clear whether the amount was estimated by DHB Officer Day—which would be consistent with *Wilson*[2]—or whether it was definitively set at $100,000 as Torres alleges. *Id.* The form is also too faint to determine the reason(s) for the decision.

In his complaint, Torres asserts that neither Cullen, IDOC, or Wexford suffered "any financial deprivation." ECF 5 at 2. Although it seems likely the violent murder of Mr. Cullen incurred some type of costs,[3] the record contains illegible documents and, as it stands, is simply too sparse for me to make that determination at this time; rather, those issues are more appropriately addressed via a motion to dismiss or summary judgment if the defendant sees fit. *See Wilson*, 143 F.4th at 820 (to support dismissal at the screening stage, the record must contain "some evidence" that the prison incurred costs as a result of the violation); *Tonn v. Dittmann*, 607 F. App'x 589 (7th Cir. 2015) (dismissal of inmate's due process claim was vacated because he "adequately alleged

---

[2] The Seventh Circuit has "never required, for purposes of federal due process, specific evidence of the amount of restitution at the time a sanction is entered." *Wilson*, 143 F.4th at 820. Instead, a hearing officer may assess an estimated restitution amount if the precise cost cannot be determined at the time of the hearing. *Id.* (citing *Ind. Dep't of Corr., The Disciplinary Code for Incarcerated Adults*, IX(E)(3)(e) (Effective May 1, 2023)).

[3] Indeed, a request for remittance dated June 2, 2022—the same day as the disciplinary sanction was imposed—notes that the purpose for the $100,000 remittance hold was for "medical, funeral, estate expenses." *See* ECF 5-1 at 6.

5

that the restitution order was not supported by any evidence");[4] *see also Erickson*, 551 U.S. at 94 (pro se plaintiff's allegations must be construed liberally and given the benefit of all reasonable inferences at screening). Accordingly, Torres will be allowed to proceed on a Fourteenth Amendment claim that he was denied due process in connection with the imposition of the restitution sanction by DHB Officer Day on June 2, 2022.

That said, he hasn't stated any plausible claims against Officer McGee or Captain Morgan. The fact that Officer McGee investigated the death of Mr. Cullen and prepared reports for the DHB hearing doesn't violate the Constitution. Nor does the fact that they allegedly deducted money from his trust fund account in accordance with the restitution sanction issued by DHB Officer Day. Although Torres claims the defendants all "conspire[d]" against him by extracting $36.18 from his trust fund account "without Torres' consent" on June 28, 2022 (ECF 5 at 3), he doesn't provide facts to support any sort of conspiracy. Even assuming later deductions were incorrectly calculated by Officer McGee and Captain Morgan, these allegations don't state a claim. Torres' alleged due process concerns were triggered during the disciplinary proceeding and by the imposition of the sanction, not by the managerial accounting steps taken afterwards. *See, e.g., Hull v. Cooke*, No. 22-2848, 2024 WL 81104, at *3 (7th Cir. Jan. 8, 2024), *reh'g denied*, No. 22-2848, 2024 WL 644676 (7th Cir. Feb. 15, 2024) (finding that even if the

---

[4] The Seventh Circuit Court of Appeals distinguished the *Tonn* case from the *Wilson* case by pointing out Wilson had attached documents to his complaint that negated his claim there was not "*any* evidence" supporting the restitution amount. *Wilson*, 143 F.4th at 820 (emphasis in original). Instead, despite Wilson's assertions, the documents he attached "demonstrate[d] that his disciplinary hearing did not violate the due process requirements of the Fourteenth Amendment." *Id*.

6

defendants overcharged or miscalculated the plaintiff's restitution charges after the hearing, his claim failed because "[a] state actor's violations of the disciplinary code or other state law does not amount to a violation of federal due process") (citing *Linear v. Vill. of Univ. Park*, 887 F.3d 842, 844 (7th Cir. 2018)); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Thus, Officer McGee and Captain Morgan will be dismissed from this lawsuit.

      Finally, Torres filed a separate motion for preliminary injunction. ECF 10. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es]

7

[it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[5] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

Torres claims the defendants have continued to remove money from his trust fund account "despite the lack of a court order mandating such payment in the amount of $100,000." ECF 10 at 1. He doesn't provide any details as to how much money has been deducted overall, nor does he claim the defendants overcharged his trust account more than the original assessed amount. The prison doesn't need an outside court order to impose or collect restitution. As it currently stands, the restitution sanction hasn't been overturned, so Torres hasn't shown his rights are being violated. *See Univ. of S. Ind.*, 43 F.4th at 791 (when assessing a preliminary injunction, a court need not accept all

---

[5] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

allegations as true or give the plaintiff "the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings.").

More importantly, although Torres argues I must grant a preliminary injunction because he is being "forced to pay restitution to an unknown source" with his educational program money and/or state pay, he doesn't explain how he will be irreparably harmed during the pendency of this case if it's not granted. Irreparable harm has been defined as "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (internal quotation marks and citation omitted); *see also Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it.") (cleaned up). If Torres eventually prevails on the merits of his case, nothing suggests he can't be made whole at that time via reimbursement and/or monetary damages. *See, e.g, Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (harm isn't irreparable if it can be "rectified by the final judgment after trial"). Simply put, a preliminary injunction isn't warranted here.

Accordingly:

(1) The motion for preliminary injunction (ECF 10) is DENIED;

(2) Juan Torres is GRANTED leave to proceed against DHB Officer Sherman Day in his individual capacity for monetary damages and/or permanent injunctive relief related to Torres' trust fund account for violating the Due Process Clause of the Fourteenth Amendment when he imposed the restitution sanction on June 2, 2022;

9

(3) All other claims are DISMISSED;

(4) M. McGee and Captain J. Morgan are DISMISSED from this lawsuit;

(5) The clerk is DIRECTED, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) DHB Officer Sherman Day at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 5);

(6) The Indiana Department of Correction is ORDERED to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) DHB Officer Sherman Day is ORDERED, under 42 U.S.C. § 1997e(g)(2), to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: December 8, 2025.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT